UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CARMEN J. GIBSON,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )        CAUSE NO. 3:14-CV-01741-CAN
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security,  )
                                     )
        Defendant.                   )

## OPINION AND ORDER

On July 23, 2014, Plaintiff Carmen Gibson ("Gibson") filed a complaint in this Court

seeking reversal or remand of the Social Security Commissioner's final decision to deny her

application for disability insurance benefits ("DIB"). On January 22, 2015, Gibson filed her

opening brief. On April 27, 2015, Defendant, Commissioner of Social Security ("the

Commissioner"), filed a Memorandum in Support of Commissioner's Decision requesting the

Court to affirm the decision denying benefits. Gibson filed a reply brief on May 11, 2015. This

Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42

U.S.C. § 405(g).

## I.    PROCEDURE

On April 5, 2011, Gibson filed an application for Title II DIB with the Social Security

Administration ("SSA") alleging disability beginning June 1, 2007. The SSA denied Gibson's

application initially on August 2, 2011, and then again on November 21, 2011, after

reconsideration was granted. On December 6, 2011, Gibson filed a timely request for an

administrative hearing. On September 25, 2012, the hearing was held before an administrative

law judge ("ALJ") where Gibson and three impartial experts appeared and testified.  On

September 28, 2012, the ALJ issued his decision finding that Gibson was not disabled at Step

Five of the disability evaluation process and denied her applications for benefits.[1]  On November

19, 2012, Gibson filed a request for review of the ALJ's decision with the Appeals Council.  On

January 6, 2014, the Appeals Council denied Gibson's request for review, making the ALJ's

decision the final decision of the Commissioner for purposes of judicial review.  Gibson then

sought judicial review of the Commissioner's final decision pursuant to sentence four of 42

U.S.C. § 405(g) by filing her complaint in this Court on July 23, 2014.

## II.    FACTS

Gibson was born on September 24, 1973, making her 33 years old on the alleged

disability onset date, and has earned a high school education.  At the time of the September 2012

hearing, Gibson was unemployed.  Prior to the alleged onset date, Gibson reportedly worked as

an assembly packer, machine operator, certified nursing assistant, and receptionist.

### A.    Relevant Medical Evidence

As part of her disability application, Gibson provided the ALJ with medical evidence

from June 1999 through September 25, 2012—the date of her hearing.  Throughout this period,

Gibson was treated with a varying medication regimen for several gynecological issues,

depression, and fibromyalgia.  Gibson also suffered from a congenital heart rhythm disorder

called Long QT syndrome that required her to have a defibrillator implanted in 1996 at the age of

15.  The defibrillator helps Gibson avoid the sudden fainting spells associated with her condition.

---

[1] Social Security regulations provide a five-part test to determine whether a claimant is disabled and consequently
entitled to disability benefits.  *See* 20 C.F.R. § 404.1545.

After receiving her first defibrillator, Gibson was hospitalized twice due to malfunctions that caused shocks from her defibrillator. She was hospitalized another time when her defibrillator appropriately shocked her in response to an episode of a racing and irregular heartbeat. In 2003, a new defibrillator was implanted decreasing her fatigue for a while. However, by August 2007, Gibson was once again plagued by fatigue as well as chronic low back pain and memory loss. Gibson had also developed anxiety and depression due to her fear of experiencing a shock from her defibrillator.

In addition to her heart symptoms, Gibson complained consistently of fatigue; pain in her hips, legs, neck, and shoulders; generalized malaise; and abdominal problems. Dr. Stephen Myron became Gibson's primary care provider in 2007 and diagnosed her with fibromyalgia on September 25, 2009. In 2010, Gibson attempted a return to work at a factory job, but lasted only two months due to her health conditions. In October 2010, Dr. Myron recommended that Gibson apply for disability benefits due to her "significant underlying health problems related to her heart and the subsequent chronic anxiety and the fibromyalgia she suffers." Doc. No. 11 at 324.

On August 1, 2012, Dr. Schvon Cummings performed a consultative examination of Gibson at the SSA's request. During the examination, Gibson reported her diagnoses of Long QT syndrome, polycystic ovarian syndrome, fibromyalgia, and bursitis. Gibson also described her symptoms of pain, reduced mobility, and anxiety as the result of those conditions. On that day, Gibson reported her pain level as 8/10. Dr. Cummings also noted that she appeared anxious. On a Medical Source Statement form, Dr. Cummings opined through check boxes that Gibson was capable of lifting up to ten pounds continuously, twenty pounds frequently, and fifty pounds occasionally; carrying up to ten pounds continuously and up to fifty pounds occasionally;

sitting without interruption for three hours and standing or walking for thirty minutes at a time

for a total of six hours of sitting in an 8-hour work day with 3 hours of standing and 2 hours of

walking.  *Id.* at 632–33.

As part of her appeal of the ALJ's decision to the Appeals Council, Gibson submitted

additional evidence including, among other things, a "Disability Evaluation" prepared by Dr.

Myron on January 31, 2013.  In the evaluation, Dr. Myron summarized Gibson's medical history

and reported results of an examination he conducted that day.  He described her symptoms,

including pain and fatigue, as well as her functional limitations and the personal issues she faced

that affected her overall health.  He also reported that his physical examination that day revealed

"multiple tender points throughout her body."  Doc. No. 11 at 748.  In addition, Dr. Myron

opined that Gibson is not a malingerer, that she cannot tolerate full-time work "due to pain and

discomfort, or anxiety/depression," and that her health problems "make it impossible for her to

hold gainful employment."  *Id.* at 750–51.

Along with Dr. Myron's Disability Evaluation, Gibson submitted a Treating Doctor's

Medical Opinion form completed by Dr. Myron on January 31, 2013.  On the form, Dr. Myron

opined that Gibson's functional limitations allowed her to frequently lift twenty pounds or less,

to twist and climb stairs frequently, to stoop and crouch occasionally, and to never climb ladders.

*Id.* at 753.  Dr. Myron also noted that Gibson was likely be absent from work more than three

days a month.

## B.     Hearing Testimony

At the ALJ hearing, Gibson described the anxiety she suffers when she is around people

as well as symptoms of chronic fatigue, depression, and panic attacks.  Gibson also testified that

she has trouble concentrating and focusing on tasks. In addition, she explained that she is plagued by anxiety based on her fear of being shocked by her defibrillator in the event she experiences a racing heartbeat. She also noted that the defibrillator makes bending over, reaching, and lifting things consistently difficult. Furthermore, Gibson testified that she has pain in her hips after sitting for more than a half an hour, low energy due to depression and lack of sleep, and reduced grip strength.

### C. ALJ's Opinion

After the hearing, the ALJ issued a written decision reflecting the following findings. At Step One of the five-step disability analysis, the ALJ found that Gibson had not engaged in substantial gainful activity from her alleged onset date of June 1, 2007, through her date last insured of June 30, 2012. At Step Two, the ALJ found that Gibson had the following severe impairments: Long QT syndrome, obesity, depression, and anxiety. At Step Three, the ALJ found that Gibson did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. The ALJ then determined that Gibson retained the residual functional capacity ("RFC") to perform light work with the following limitations: limited to simple and repetitive tasks; cannot climb ladders, ropes, and scaffolds; must avoid unprotected heights; no more than occasional contact with the general public; and cannot perform high impacting grasping, such as use of power tools.

At Step Four, the ALJ found that Gibson was unable to perform any past relevant work. At Step Five, the ALJ found that considering Gibson's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform. Based on these findings, the ALJ determined that Gibson had

not been disabled from June 1, 2007, the alleged onset date, through June 30, 2012, the date last insured.  Consequently, the ALJ denied disability benefits to Gibson.

### D.    Appeals Council Decision

As described above, Gibson submitted additional medical evidence to the Appeals Council along with her request for review of the ALJ's decision denying her disability benefits. The Appeals Council denied Gibson's request for review.  In its Notice informing her of its decision, the Appeals Council stated the following:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Doc. No. 11 at 6–7.  The Order of Appeals Council noted receipt of additional evidence including but not limited to a document referenced as "Residual Functional Capacity Report from Dr. Stephen R. Myron dated January 31, 2013 (8 pages)."[2]  Doc. No. 11 at 10.

### III.    ANALYSIS

### A.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

---

[2] The Order of Appeals Council also noted that it had received three other pieces of additional evidence from Gibson that were made part of the record as exhibits.  Gibson does not challenge the Appeals Council's interpretation of those three exhibits.  Therefore, the Court need not identify them with specificity.

Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 468 F.3d 513, 516 (7th Cir. 2001).

A reviewing court is not to substitute its own opinion for that of the ALJ or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

### B.     Issues for Review

Gibson seeks reversal and remand of the ALJ's decision, arguing that: (1) the ALJ's opinion is not supported by substantial evidence and (2) the Appeals Council erred in its consideration of Dr. Myron's January 2013 reports.

### 1.     The ALJ's Decision is Supported by Substantial Evidence.

In challenging the ALJ's decision, Gibson argues that the ALJ's RFC assessment is incomplete because (1) it failed to account for any limitations caused by Gibson's fibromyalgia; (2) the ALJ improperly discounted the opinions of Dr. Myron and Dr. Cummings without

providing good cause for doing so; and (3) the ALJ failed to support his credibility determination with substantial evidence.

An individual's RFC demonstrates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and their symptoms, including pain. 20 C.F.R. § 404.1545; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1512(c). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1545. Therefore, when the record does not support specific limitations or restrictions on a claimant's work related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

### a. Gibson's Limitations Due to Her Fibromyalgia

In attacking the ALJ's RFC determination, Gibson complains that (1) the ALJ did not include fibromyalgia among her severe impairments at Step Two, and (2) the ALJ erred by failing to account for fibromyalgia-related limitations in the RFC. Both arguments fail.

### i. Step Two Severity Analysis

The ALJ's severity assessment of Gibson's fibromyalgia at Step Two is irrelevant as the ALJ supported his RFC and overall disability determinations with substantial evidence. At Step Two, an ALJ considers whether a claimant has an impairment that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it is medically determinable and causes

significant limitation in the claimant's ability to perform basic work activities. 20 C.F.R.

§ 404.1520(c). The severity assessment, however, is only a threshold inquiry to screen out

groundless disability applications. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). "As

long as the ALJ determines that the claimant has one severe impairment, the ALJ [must] proceed

to the remaining steps of the [disability] evaluation process," including the RFC analysis that

requires consideration of all the evidence in the record. *Id.* at 926–27 (citations omitted).

Here, the ALJ identified severe impairments at Step Two forcing him to proceed further

with the disability analysis, where he was required to consider all the evidence in the record,

including Gibson's fibromyalgia. A Step Two finding that Gibson's fibromyalgia constituted a

severe impairment would only have benefited Gibson if she could establish that her fibromyalgia

met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 at Step Three. Gibson does not even raise such a Step Three argument. Therefore,

the severity finding at Step Two related to her fibromyalgia is irrelevant to the ALJ's ultimate

disability determination and does not justify remand.

Moreover, the ALJ supported with substantial evidence his Step Two determination that

Gibson's fibromyalgia was a non-severe, medically determinable impairment. In support of his

conclusion, the ALJ cited to objective medical evidence as well as Gibson's own allegations of

her symptoms. For instance, the ALJ acknowledged that the evidence in the record showed that

Gibson had a history of pain resulting from her fibromyalgia. However, the ALJ also cited to the

lack of any objective medical evidence documenting tender points as well as other normal test

results. Based on that evidence, the ALJ concluded that Gibson's pain did not preclude light

work[3] and that her fibromyalgia, when properly treated and maintained, resulted only in minimal limitation in her work-related abilities. Having built a logical bridge from the evidence to his conclusions, the ALJ's Step Two determination is supported substantial evidence.

## ii.    Fibromyalgia-based Limitations in the RFC

An ALJ is required to determine a claimant's RFC based on all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). Gibson argues that the ALJ's RFC assessment was incomplete and his conclusion was contrary to the evidence in the record, which warrants reversal or remand. In particular, Gibson indicates that she suffers from severe pain, malaise, fatigue, and cognitive dysfunction; sleeps through most of each day; takes heavy-duty narcotic pain medications; and cannot sit for longer the thirty minutes. Gibson argues that the ALJ failed to take into account these fibromyalgia-related symptoms in determining her RFC.

The ALJ's opinion, however, reflects consideration of the symptoms Gibson describes. In the credibility section of his RFC analysis, the ALJ explicitly acknowledged Gibson's alleged pain multiple times citing to various medical evidence, including December 2009 and January 2012 visits to Dr. Myron, the August 2012 consultative physical examination by Dr. Cummings, and the June 2011 consultative psychological examination by Dr. Badry. *See* Doc. No. 11 at 52–54. The ALJ also referenced Gibson's own allegations of pain explicitly multiple times. *Id.* at

---

[3] Under 20 C.F.R. § 404.1567,

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

53, 55.  The ALJ cited a report of Gibson's fatigue caused by her increased working hours in the notes of a visit to her cardiologist, Dr. Prystowsky, in March 2008.  *Id.* at 51.  The ALJ noted Gibson's report of having difficulty sleeping and a sleep disorder related to a major depressive disorder to Dr. Roberts who conducted a mental status exam in July 2012.  *Id.* at 55.  In addition, the ALJ noted that (1) Gibson was taking various medications for her impairments, (2) she reported no side effects to her doctors, and (3) Dr. Myron reported Gibson's own claim that the medications were helpful and his observation that she was doing well on the medications in notes from her March and September 2008 visits.  *Id.* at 56.  The ALJ did not, however, explicitly mention her claim that she cannot sit for longer than thirty minutes.

With all these citations, the ALJ demonstrated that he considered Gibson's alleged fibromyalgia-related symptoms in his RFC analysis.  Gibson disagrees with how the ALJ interpreted these symptoms, but they were not ignored.  Even the ALJ's lack of reference to Gibson's claim that she could sit for no longer than thirty minutes is harmless.  Gibson cites no evidence to support her contention about her inability to sit for extended periods of time. Remand is not warranted for this single omission.

### b.      Weight Given to the Opinions of Drs. Myron and Cummings

In determining the proper weight to accord medical opinions, "[t]he ALJ must give substantial weight to medical evidence and opinions submitted unless specific, legitimate reasons constituting good cause are shown for rejecting it."  *Id.* (citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)).  Stated another way, an ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record.

*Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). Generally, an ALJ weighs the opinions of a treating source more heavily because he is more familiar with the claimant's conditions and circumstances. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). A medical opinion may be discounted if it is internally inconsistent or inconsistent with other substantial evidence in the record. *Clifford*, 227 F.3d at 870. While the ALJ is not required to award a treating physician controlling weight, the ALJ must articulate, at a minimum, his reasoning for not doing so. *Hofslien*, 439 F.3d at 376–77. The court must allow an ALJ's decision to stand if he "minimally articulate[d]" his reasons—a very deferential standard that is, in fact, deemed "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citations omitted).

As to the opinions of State Agency physicians and psychologists, ALJs are not bound by their findings, but may not ignore these opinions and must explain the weight given to the opinions in their decisions. SSR 96-6p. Yet, such opinions can be given weight only insofar as they are supported by evidence in the record. *Id.* Moreover, [w]here there is a conflict between medical opinions, it is for the ALJ to decide which doctor to believe. *Sedrak v. Callahan*, 987 F. Supp. 1063, 1067 (N.D. Ill. 1997) (citing *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)).

In his discussion of the opinion evidence, the ALJ started by stating that:

the above [RFC] is consistent with, although somewhat more restrictive than, the opinions of the physicians and psychologists with Disability Determination Services. Each of these opinions is consistent with and supportive of the [RFC] that has been assessed.

12

Doc. No. 11 at 56 (internal citations omitted). The ALJ then proceeded with brief comments about the opinions of Dr. Myron, Gibson's treating physician; Dr. Cummings, the consultative examining physician; and Drs. Kaplan and Olive, the medical experts who testified at the ALJ hearing. Gibson now asserts that the ALJ improperly rejected the medical opinions of Dr. Myron and Dr. Cummings. She contends that the ALJ's rationales for discounting the opinions were flawed and insufficient because the ALJ failed to cite specific, legitimate reasons that would constitute good cause for rejecting the opinions. *Id.*

### i. Dr. Myron's Opinion

Gibson alleges that the ALJ rejected Dr. Myron's opinion that she could not work simply because he had released her to work just three months before encouraging her to apply for disability in October 2010 and because "Dr. Myron's treatment notes do not indicate any condition so severe as to be disabling." *Id.* Gibson argues that the ALJ's rationale is flawed because he misunderstood the role of Gibson's attempt to return to work in Dr. Myron's 2010 opinion and because Dr. Myron's notes could not have revealed objective medical evidence of fibromyalgia because fibromyalgia symptoms are subjective. Gibson also contends that the ALJ failed to identify with any specificity the alleged inconsistencies between Dr. Myron's opinion and his treatment notes. None of these arguments are persuasive.

To start, Gibson's premise that the ALJ rejected Dr. Myron's opinion is unjustified. Nowhere in his decision does the ALJ explicitly or implicitly state that he was giving no weight to Dr. Myron's opinion. In fact, the ALJ's thorough articulation of evidence related to Dr. Myron's treatment of Gibson from August 2007 through July 2012, as well as Dr. Myron's opinion about Gibson's inability to work, shows that he did consider Dr. Myron's opinion. By

laying out the evidence, the ALJ also outlined inconsistencies between Dr. Myron's opinion and his treatment notes that overcome any potential error related to Gibson's work in July 2010. For instance, the ALJ cited to Dr. Myron's notes (1) throughout 2010 showing "unremarkable" physical exams [Doc. No. 11 at 324–32]; (2) in January 2011 indicating that Gibson appeared to be very happy, had lost some weight, and looked to be doing great [*Id*. at 321]; from a July 2012 physical exam that was normal other than some tenderness over the left hip attributable to bursitis with comments that Gibson was doing well [*Id.* at 715]. Such evidence makes the ALJ's concern about inconsistencies reasonable.

Gibson also appears to challenge the brevity of the ALJ's explicit discussion of Dr. Myron's opinion. An ALJ's analysis is not "unreasoned because the ALJ did not incorporate [relevant] information [discussed in separate parts of the decision] within a single paragraph." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678 (7th Cir. 2010). An ALJ's decision should be read "as a whole and with common sense." *Id.* at 679. An ALJ's discussion from one part of his decision may be imputed to another aspect of the analysis. *Rice v. Barnhardt*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). And in this case, where the ALJ's decision clearly incorporates the entire RFC analysis into his explanation for the weight given to Dr. Myron's opinion, the ALJ has articulated his rationale sufficiently.

### ii.    Dr. Cummings's Opinion

Gibson contends that the ALJ rejected Dr. Cummings's opinion claiming that she had relied heavily on Gibson's subjective report of her symptoms without any, or even substantial, evidence in support. In addition, Gibson argues that the ALJ should have re-contacted Dr.

Cummings for clarification if the ALJ had any doubts about Dr. Cummings' opinion. Again, Gibson's arguments are not persuasive.

Once again, there is no indication that the ALJ rejected Dr. Cummings's opinion completely. In fact, comparison of Dr. Cummings's 2012 Medical Source Statement and the ALJ's RFC reveal that the ALJ incorporated many of the limitations identified by Dr. Cummings directly into his RFC. However, the ALJ also found several inconsistencies between Dr. Cummings's Medical Source Statement and the notes from her consultative examination of Gibson leading to the conclusion that "Dr. Cummings' physical exam does not reflect the limitations given in the medical source statements." Doc. No. 11 at 56. Earlier in his decision, the ALJ had thoroughly outlined evidence of several such inconsistencies. Dr. Cummings could have clarified these inconsistencies herself by referencing particular medical or clinical findings as allowed on the Medical Source Statement. She did not. And Gibson has not raised any explanation for why it was unreasonable for the ALJ to conclude that Dr. Cummings had uncritically adopted Gibson's subjective reports. As such, the Court is convinced that the ALJ supported his decision to discount Dr. Cummings's opinion with substantial evidence and sufficiently articulated his rational for doing so.

Moreover, Gibson has not shown that Dr. Cummings's report was inadequate or incomplete to warrant further contact for clarification. *See* 20 C.F.R. § 404.1519p(b). "An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). In this case, the record was not inadequate. It just did not support all of Dr. Cummings's

conclusions regarding Gibson's ability to work.  Therefore, the weight given to Dr. Cummings's opinion is supported by substantial evidence and stands.

<b>c.      Credibility</b>

Gibson contends that the ALJ's credibility determination is patently wrong because it is not supported by the facts and reflects errors in the ALJ's review of the record.  Gibson suggests that the ALJ should have taken the subjective nature of her fibromyalgia as well as her own assessment of her abilities into greater account in reaching his disability decision.

In assessing a claimant's subjective symptoms, the ALJ must follow a two-step process. SSR 96-7p.  The ALJ must first determine whether there is a medically determinable impairment that can be shown by acceptable medical evidence and can be reasonably expected to produce the claimant's pain or other symptoms.  *Id.*  If such an underlying impairment exists, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work.  *Id.*  Whenever a claimant's statements about the symptoms and limitations of his impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  *Id.*  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary or the Secretary's designate, the ALJ.  *Herr v. Sullivan*, 912, F.2d 178, 181 (7th Cir. 1990).

An ALJ's decision regarding a claimant's credibility must contain specific reasons for the finding on credibility, be supported by evidence in the record, and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight the ALJ gave to the

claimant's statements and the reasons for that weight.  SSR 96-7p.  Yet, the ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of disability. *Rice,* 384 F.3d at 371.

While a claimant can establish the severity of his symptoms by his own testimony, an ALJ need not accept the claimant's subjective complaints to the extent they clash with other, objective medical evidence in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). Because an ALJ is in a special position to assess witnesses, his credibility determinations are given special deference and will only be overturned if they are patently wrong.  *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012).  An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support.  *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

In this case, the ALJ found Gibson's allegations of the severity of her symptoms not fully credible.  In support, the ALJ cited objective medical evidence, and other evidence, including Gibson's daily activities, her "work activity after the alleged onset date," her lack of consistent counseling or therapy, and her symptoms being "unfounded elsewhere in the record."  Doc. No. 11 at 55.  The ALJ clearly accepted that Gibson's symptoms were consistent with her impairments.  Gibson, however, argues that the ALJ inaccurately interpreted the effects of Gibson's daily activities, work history, and other precipitating or aggravating factors, including her inability to pursue psychiatric treatment and the subjective nature of fibromyalgia.

Indeed, if the paragraphs in which the ALJ discussed Gibson's daily activities and work history; the location, duration, frequency, and intensity of her symptoms; other precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications; and

treatment other than medication was the extent of his credibility analysis, Gibson's argument

might have sway. *See* Doc. No. 11 at 55–56. Standing alone, these five paragraphs are devoid

of citations to the record to support the ALJ's conclusions. Looking at the ALJ's decision as a

whole, however, paints a different picture. Throughout his decision, the ALJ provided an

extensive explication of the objective medical evidence that brings into question the credibility

of Gibson's alleged symptoms. The ALJ's opinion is a reader friendly timeline of Gibson's

medical experiences as seen through the notes of her doctors and accompanied by evidence

showing the results of assorted exams, tests, and treatments. Taking into account this recital of

medical evidence, the ALJ's five paragraphs discussing the extent of Gibson's alleged symptoms

is consistent with the record as a whole. Thus, this Court cannot say that the ALJ's credibility

determination was patently wrong.

Review of the ALJ's decision, as discussed above, establishes that (1) the ALJ considered

Gibson's limitations arising from her fibromyalgia when defining her RFC; (2) the ALJ

supported with substantial evidence the weight given to Dr. Myron's and Dr. Cummings's

medical opinions in the RFC analysis; and (3) the ALJ's credibility determination was not

patently wrong. Therefore, the ALJ's decision is supported by substantial evidence making

remand on these issues inappropriate. The Court now turns to the Appeals Council's decision.

### 2. The Appeals Council's Decision as to Gibson's Additional Evidence Does Not Warrant Remand

#### a. Relevant Background

After the ALJ issued his decision denying Gibson's application for DIB, Gibson

submitted an appeal to the Appeals Council along with additional evidence. Gibson's additional

evidence included, among other things, (1) a five-page "Disability Evaluation," (2) a completed "Treating Doctor's Medical Opinion for Social Security Disability" form, and (3) office visit notes all dated January 13, 2013, and signed by Gibson's treating physician, Dr. Myron. In these January 2013 reports, Dr. Myron noted the results of his examination of Gibson that day and opined about her work limitations. Notably, Dr. Myron discussed Gibson's fibromyalgia and reported that his exam revealed "multiple tender points throughout her body." *Id.* at 748. After reviewing all of the medical conditions affecting Gibson and specifying the resulting limitations on her ability to work, Dr. Myron concluded that "[Gibson] is a very nice person and she wants to work, but unfortunately she has been given some health problems that make it impossible for her to hold gainful employment." *Id.* at 751.

On January 6, 2014, the Appeals Council denied Gibson's request for review of the ALJ's decision in a letter stating that the Appeal Council had "considered the reasons [Gibson disagreed] with the decision and the additional evidence [but] found that this information does not provide a basis for changing the Administrative Law Judge's decision." *Id.* at 7. Before this Court, Gibson now argues that the Appeals Council erred by finding that the additional evidence Gibson submitted was not material and therefore did not qualify for review by the Appeals Council. Citing *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012), Gibson contends that this errors warrants *de novo* review by this Court.

The Commissioner, on the other hand, argues that the Appeals Council found Gibson's additional evidence to qualify as new, material, and time-relevant but that the ALJ's decision still was not contrary to the weight of the record, including Gibson's qualifying additional evidence. Citing *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997), the Commissioner contends that the

Appeals Council's decision to deny review, after considering Gibson's qualifying additional evidence, is discretionary and unreviewable by this Court.

### b.  Analysis

The Appeals Council is required to consider additional evidence that is "new and material" and "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b).  If the Appeals' Council finds the ALJ's decision to be contrary to the weight of the evidence, including the claimant's additional qualifying evidence, it can then grant *de novo* review of the ALJ's decision.  *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015) (citing *id.*).  The district court may review the Appeals Council's decision *de novo* for legal error if the Appeals Council determines that the claimant's additional evidence is not "new and material" and does not qualify for review under Section 404.970(b).  *Farrell*, 692 F.3d at 771.  If, however, the Appeals Council determines that the claimant's additional evidence qualifies as new, material, and time-relevant, but denies review of the ALJ's decision after concluding that the record as supplemented does not show that the ALJ's decision was contrary to the weight of the evidence, its decision to deny review of the ALJ's decision is "discretionary and unreviewable." *Perkins*, 107 F.3d at 1294.

In this case, the parties disagree as to whether the Appeals Council found Gibson's additional evidence to constitute "qualifying evidence."  As a result, they also disagree about whether the *Farrell* or *Perkins* standard of review should apply in this case.

In *Perkins*, the claimant submitted additional evidence to the Appeals Council from a psychologist, hired by the claimant's attorney, who reviewed the claimant's record and assessed the claimant's mental RFC.  107 F.3d at 1292.  In denying review of the ALJ's decision, the

Appeals Council stated that it "had reviewed the entire record, including the new material, and had concluded that there was no basis to grant the request under either 20 C.F.R. § 404.970 or 20 C.F.R § 416.1470." *Id.* The Council also stated that "neither the contentions nor the additional evidence provides a basis for changing the decision." *Id.* at 1294. The Seventh Circuit opined that the Council's notice, which included boilerplate language and a paragraph devoted to the content and persuasiveness of the psychologist's review of the claimant's file, showed that it had determined that the claimant's additional evidence qualified as new and material. *Id.* Therefore, the court held that the Council's decision was discretionary and unreviewable. *Id.*

In *Farrell*, the claimant argued that the "Appeals Council erred by refusing to consider her new evidence confirming a diagnosis of fibromyalgia." 692 F.3d at 770. The claimant's additional evidence documented that the claimant tested positive for sixteen of eighteen tender points when only eleven were needed to establish the diagnosis. *Id.* The Council's notice of decision denying review stated that it "considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision." *Id.* at 771. The court noted that the Council's boilerplate language was ambiguous because it could have indicated that the additional evidence was immaterial, or that the evidence was material but still insufficient to reach a different result. *Id.* The court then held that the boilerplate language alone was not sufficiently specific to demonstrate if the Council had reviewed and accepted the claimant's additional evidence. *Id.* After analyzing whether the additional evidence qualified as new and material, the court remanded the case because the evidence filled an evidentiary gap—a lack of medical evidence confirming a fibromyalgia diagnosis—that the ALJ had relied on in finding the claimant not disabled *Id.*

Gibson's case more closely resembles the facts in *Farrell*.  Unlike the *Perkins* notice, the Appeals Council's letter to Gibson included only boilerplate language with no discussion of the content or persuasiveness of the additional evidence.  In addition, the boilerplate language in *Farrell* is almost identical to the boilerplate language in Gibson's letter.  Moreover, the claimant in *Farrell* was trying to secure disability benefits based largely on a fibromyalgia diagnosis much like Gibson is.  Gibson's additional evidence is also similar to the evidence at issue in *Farrell* in that it addresses Gibson's tender points as well as other clarification of her limitations.  Gibson's additional evidence could also fill an evidentiary gap just as the evidence in *Farrell* did.  With these similarities, the Appeals Council's letter to Gibson was likely ambiguous about whether Dr. Myron's January 2013 reports qualified as new, material, and time-relevant evidence.

The Commissioner, however, argues that there is no ambiguity.  The Commissioner contends that the Council's letter makes clear that Gibson's additional evidence was qualifying and denied review because the ALJ's decision was not contrary to the weight of the record, even in light of Gibson's additional evidence.  As such, the Commissioner suggests this Court should apply the *Perkins* "discretionary and unreviewable" standard rather than the *Farrell de novo* standard.  In support, the Commissioner cites to procedures for dealing with post-decision evidence outlined in the SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX").

Under HALLEX I-3-5-20, Section B the Appeals Council must identify any qualifying evidence upon which a finding and decision are based as an "Exhibit" and add that evidence to the administrative record.  Here, the Order of Appeals Council, referenced in the Council's letter, specifically designated Gibson's appeal brief and other medical evidence as Exhibits 21E, 26F, 27F, and 28F and added them to the administrative record.  Accordingly, the Commissioner

concludes that Gibson's post-decision submissions were qualifying evidence and were considered as such by the Appeals Council. Yet the Commissioner's HALLEX argument is not as convincing as she would hope.

In October 2015, after the parties completed their briefs in this case, the Seventh Circuit addressed the HALLEX argument in *Stepp v. Colvin*. The Appeals Council's denial letter in *Stepp* is very similar to the letter sent to Gibson. In both, the Council used boilerplate language referencing "additional evidence listed in the enclosed Order of Appeals Council." *Compare Stepp*, 795 F.3d at 724, *and* Doc. No. 11 at 6. In *Stepp*, the Council designated medical evidence submitted after the ALJ's decision as Exhibit 26F just as the Council in this case designated Gibson's brief and other medical evidence as Exhibits 21E, 26F, 27F, and 28F. The Commissioner similarly argued that "inclusion of [the additional evidence] in the list of exhibits conclusively establishes that the Council deemed those notes new and material." *Stepp*, 795 F.3d at 724. Yet the Seventh Circuit rejected the Commissioner's argument.

The *Stepp* court first noted that the Appeals Council had listed the newly proffered evidence on the Order of Appeals Council like the Council had done in *Farrell*. *Id*. The court held that designation of exhibits was not any more persuasive in *Stepp* than it had been in *Farrell* because on neither occasion had the Appeals Council fully complied with the HALLEX procedure demanding that "when evidence is found to be new and material, 'language in the denial notice *specifically identify* [] the evidence (by source, date range, and number of pages)." *Id.* at n.6 (citing HALLEX I-3-5-20). Even though the Order identified the additional evidence by source, date, and pages, the court found that the denial notice itself did not strictly comply with the applicable HALLEX procedures and applied the *Farrell* standard. *Id.*

Because the Appeals Council's letter to Gibson parallels the denial notices in both *Stepp* and *Farrell*, and because it includes no discussion of the evidence at issue, the Court is similarly unpersuaded by the Commissioner's HALLEX argument here. Without clarity in the text of the Council's letter, it is ambiguous as to whether or not it deemed the evidence new, material, and time-relevant. As a result, the Court agrees with Gibson that the Appeals Council rejected Gibson's additional evidence as non-qualifying under 20 C.F.R. § 404.970(b). Accordingly, the *Farrell* standard applies and this Court must review *de novo* the Council's determination that Gibson's additional evidence did not qualify as new and material. Because Gibson raises arguments related to Dr. Myron's January 2013 reports, the Court will only review that exhibit.

Dr. Myron's reports constitute "new" evidence within the meaning of 20 C.F.R. § 404.970(b). Dr. Myron did not prepare the reports until January 2013, about four months after the ALJ's issued his decision in September 2012. *See Perkins*, 107 F.3d at 1296).

Dr. Myron's reports, however, are not "material." Evidence is "'material' under Section 404.970(b) if it creates a 'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered.'" *Stepp*, 795 F.3d at 725 (quoting *Perkins*, 107 F.3d at 1296). The ALJ rejected some of the fibromyalgia-related symptoms that Gibson alleged asserting that her fibromyalgia diagnosis had not been confirmed by documentation of tender points and that there were inconsistencies between Dr. Myron's treatment notes and his opinion. Gibson argues here that Dr. Myron's reports fill evidentiary gaps identified by the ALJ and rebut other aspects of the ALJ's decision. Gibson's arguments are unpersuasive.

First, Gibson contends that Dr. Myron reported tender points when examining Gibson on January 31, 2013, which allegedly confirms a fibromyalgia diagnosis. Unlike the additional evidence in *Farrell*, however, Dr. Myron's report of tender points is not time-relevant. Not only does the January 2013 report represent the state of Gibson's symptoms after the ALJ issued his decision, it also represents the state of her symptoms after her date last insured. Furthermore, Dr. Myron's "Treating Doctor's Medical Opinion" reflects his assessment of her limitations on January 31, 2013, rather than during the relevant insured period.

Second, Gibson identifies a litany of alleged misrepresentations of the evidence by the ALJ and cites to several parts of Dr. Myron's narrative "Disability Evaluation" to rebut the alleged misinterpretations. However, Dr. Myron's narrative does not present evidence unavailable before the ALJ's decision was issued. The narrative simply provides greater explanation of Dr. Myron's unchanged opinion in a clear attempt to rebut the ALJ's articulated conclusions. It is therefore more extensive, but not different evidence. Moreover, remanding for consideration of the January 2013 reports would amount to an inappropriate second bite at the apple for Gibson.

Gibson is responsible for providing medical evidence showing how her impairments affect her functioning. *See* 20 C.F.R. § 404.1545. Gibson provides no explanation for why she did not provide a complete version of Dr. Myron's opinion during the period while the ALJ was reviewing her case. Her delay does not establish a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. As a result, Gibson's materiality argument is fruitless and the Appeals Council's decision is affirmed.

## IV.  CONCLUSION

With this case, both the ALJ and the Appeals Council faced the challenge of making a disability determination based in large part on Gibson's diagnosis of fibromyalgia, the symptoms of which are inherently difficult to support with objective medical evidence.  Despite this challenge, however, the ALJ supported his Step Two and RFC analyses with substantial evidence as discussed above.  In addition, the additional evidence that Gibson submitted to the Appeals Council was not material and therefore does not justify remand.  As a result, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 7th Day of March, 2016.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge